**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| MERCY MEDICAL CENTER, INC., | * |
| Plaintiff, | * |
|  | * |
| v. | *       Civil No. 26-292-BAH |
| FIDELIS SOFTWARE SOLUTIONS, LLC ET AL., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Mercy Medical Center, Inc. ("Mercy") originally brought a breach of contract action against Fidelis Software Solutions, LLC ("Fidelis") and Planned Administrators, Inc. ("PAI") (collectively "Defendants") in the Circuit Court for Baltimore City alleging that Defendants failed to pay medical bills submitted by Mercy at the rates set by the Maryland Health Services Cost Review Commission ("MHSCRC" or the "Commission") for medical services rendered to the minor child of an employee of Fidelis. ECF 2. PAI removed this action to this Court. ECF 1. At the time of removal, Fidelis had not yet been served, ECF 8, at 1, and there is no evidence on the docket of service on Fidelis at present. Pending before the Court is PAI's motion to dismiss. ECF 9. Mercy filed an opposition, ECF 14, and PAI filed a reply, ECF 17. All filings include memoranda of law, and the motion includes an exhibit.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, PAI's motion to dismiss is **GRANTED**. Additionally,

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Mercy has fourteen (14) days from the date of this decision to update the Court as to the status of service on Fidelis and to move for any relief related to service, amending its complaint, or seeking remand of this action to state court. Failure to do so will result in dismissal of this case without further notice.

## I.    BACKGROUND

At the dismissal stage, the Court must accept as true all well-pled facts in Mercy's complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Mercy alleges Fidelis provides health insurance for its employees, and PAI acts "as a third-party administrator for [ ] Fidelis and in that capacity is responsible for processing health insurance claims for employees of [ ] Fidelis and their dependents." ECF 2, at 2 ¶ 6. As part of that role, PAI is responsible for "paying medical providers that have provided health care services" to such employees and their dependents. *Id.*

Mercy alleges that between "September 11, 2022, and December 31, 2022," Mercy "provided inpatient health care services for [a] minor child," "IR," who is "a dependent of an employee of [ ] Fidelis." *Id.* ¶ 7. The rates Mercy charged for the services it provided to IR are set by the HSCRC. *Id.* ¶ 8. Mercy "timely submitted bills to the Defendants" for such services. *Id.* ¶ 9. However, Mercy alleges that "Defendants failed to pay the submitted bills at the rates set by the HSCRC, and for each bill adjusted down from the HSCRC rates and paid an amount lower than the charges for the services." *Id.* ¶ 10. According to Mercy, "Defendants justified these reductions by stating that the bills were audited at a rate lower than is provided by the HSCRC." *Id.* at 3 ¶ 11.

"Despite numerous requests by" Mercy and its "agents," "Defendants have failed to correct their payment reductions." *Id.* ¶ 13. Mercy characterizes this failure to reimburse at the HSCRC

2

rate as "a breach of contract."[2] *Id.* ¶ 12. Mercy also invokes the § 15-1005 of the Insurance Article of the Maryland Code, which Mercy reads as stating "that a provider of medical insurance shall be responsible for interest on all medical bills that are not timely paid." *Id.* ¶ 14. Mercy thus concludes that Defendants are "liable to [Mercy] for statutory interest" and seeks "compensatory damages . . . , jointly and severally, in an amount exceeding Seventy-Five Thousand Dollars, plus statutory interest, attorney's fees, and the costs of these proceedings." *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.,* 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's]

---

[2] Mercy agrees that the "claim at issue is a breach of contract claim," although it notes that its claim "might have been more properly brought under quasi contract or for unjust enrichment." ECF 14, at 9. To the extent that this is an attempt to amend the pleadings, the Court notes that a plaintiff "may not amend the pleadings in an opposition brief." *Alston v. Fed. Home Loan Mortg. Corp.,* Civ. No. DLB-20-3272, 2022 WL 824849, at *4 n.2 (D. Md. Mar. 17, 2022) (citing *Zachair, Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd,* 141 F.3d 1162 (4th Cir. 1998)).

3

claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.    ANALYSIS

PAI argues that Mercy "has not and cannot state a legally sufficient cause of action against PAI" for the harm it alleges. ECF 9-1, at 1–2. First, PAI argues that Mercy's "state law claim for breach of contract is expressly preempted by ERISA," which according to PAI "completely preempts state law claims that seek to recover benefits due under the terms of an ERISA plan and converts these state claims into federal claims." *Id.* at 2. Moreover, PAI contends that Mercy "cannot demonstrate that it has exhausted its administrative remedies as required by ERISA before instituting a claim under the Plan." *Id.* Second, PAI argues that Mercy "cannot demonstrate that PAI has any contractual duty to [it] that could have been the subject of a breach." *Id.* PAI contends that Mercy "is not in privity with PAI because, as Plaintiff's allegations make clear, PAI is only a third-party administrator of the Fidelis Plan." *Id.* Accordingly, PAI argues that even if ERISA did not preempt Mercy's action, PAI is not liable because "PAI owes no duty to the Plan's insureds"—rather, its "role in the Plan is ministerial only, [and] Fidelis determines the rates for reimbursement." *Id.*

Mercy counters that "[n]one of these arguments warrant dismissal at the pleading stage." ECF 14, at 1. First, Mercy contends that "PAI's preemption theory relies on incomplete plan documents and references not part of the complaint, while simultaneously faulting the plaintiff for not attaching the plan." *Id.* And Mercy suggests that PAI's "exhaustion argument is based on the absence of allegations in the complaint, despite exhaustion being an affirmative defense." *Id.* Second, Mercy argues that "[t]he PAI privity argument ignores the [ ] allegations that PAI deliberately processed and paid claims," which Mercy asserts the Court must take as true at this stage. *Id.* To the extent necessary, the Court addresses PAI's preemption theory, before turning·

4

to the dispositive issue: whether, even assuming this is a state law breach of contract claim, Mercy has stated a claim for breach of contract sufficient to survive Rule 12(b)(6). The Court concludes Mercy has not. The Court also addresses the matter of Fidelis in this case moving forward.

## A.    ERISA Preemption

First, PAI argues that despite Mercy's "framing as a state common law claim for breach of contract," any claims asserted are "for payment of benefits and/or enforcement of the terms of an ERISA health care plan." ECF 9-1, at 7. PAI suggests that Mercy's complaint falls "squarely within the scope of ERISA's civil enforcement provision, Section 502(a)." *Id.*

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). "To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (internal citation omitted) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). "ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'" *Id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). "This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

"ERISA's express preemption provision, § 514, states that ERISA supersedes all state laws insofar as they 'relate to' an ERISA plan." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189–90 (4th Cir. 2002); 29 U.S.C. § 1144(a). "In construing § 514(a), the phrase 'relate to' is

5

'given its broad common-sense meaning, such that a state law relate[s] to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Gross v. St. Agnes Health Care, Inc.,* Civ. No. ELH-12-2990, 2013 WL 4925374, at *7 (D. Md. Sept. 12, 2013) (quoting *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 560 (4th Cir. 1994)). Parties may not "avoid ERISA's preemptive reach by recasting otherwise preempted claims as state-law contract and tort claims." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007).

Section 502(a) of ERISA specifically permits plan participants "to enforce [the participant's] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Accordingly, an action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an alternative enforcement mechanism for ERISA § 502 and is therefore 'relate[d] to' an ERISA plan and preempted by § 514." *Darcangelo*, 292 F.3d at 195 (citations omitted). Thus, as the Supreme Court established in *Aetna Health Inc. v. Davila,* "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210.

Mercy contends that its breach of contract claim "is unrelated to the management and supervision of an ERISA plan" and thus "based on a separate obligation," ECF 14, at 6, or, as the Supreme Court has phrased it, an "independent legal duty," *Davila*, 542 U.S. at 210. Relying primarily on the Second Circuit case of *Montefiore Medical Center v Teamsters Local 272*, but providing no reporter citation to the case, Mercy argues that "its claim is unrelated to the management and supervision of an ERISA plan." *Id.* at 4–6. Rather, Mercy asserts that "[t]here was an agreement to pay, and Fidelis and PAI did pay; they simply did not pay what Maryland

6

requires them to pay." *Id.* at 6. In other words, Mercy suggests that "[t]here is a difference between right to payment and claims involving the *amount* of payment." *Id.* (citation unknown).[3]

The Second Circuit considered a case bearing some similarities to the present matter in *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011). There, a hospital provided medical services to beneficiaries of a Teamsters fund, an employee benefit plan governed by ERISA. *Id.* at 325. Although the plan set forth other rates of payment, it did "not establish a rate or schedule at which in-network or out-of-network providers will be reimbursed." *Id.* at 325–26. As the Second Circuit observed, such reimbursement schemes "are usually set by separate agreements between providers and . . . the ERISA benefit plan." *Id.* at 326. And that was indeed the case in *Montefiore*; a contract "established the specific rates and terms under which the Fund would reimburse the providers for services." *Id.* The agreement was separate from but "included many cross-references to the terms" of the benefits plan. *Id.* The hospital brought suit for breach of contract and unjust enrichment against the Teamsters fund, "seeking payment for over $1 million in medical services provided to Plan beneficiaries that the Fund had allegedly failed to reimburse." *Id.* The Teamsters fund argued that "the claims fell within the civil enforcement provisions of ERISA and were therefore completely preempted by federal law." *Id.*

Accordingly, the Second Circuit faced the question of "whether a health care provider's breach of contract and quasi-contract claims against a benefit plan established pursuant to [ERISA] are completely preempted by federal law under the two-pronged test for ERISA preemption established in *Aetna Health Inc. v. Davila*." *Id.* at 324. The Second Circuit concluded that "where a provider's claim involves the *right to payment* and not simply the *amount or execution of*

---

[3] Mercy quotes this language in its opposition, but it is not clear where the quoted language originated from.

7

*payment*," such a claim fell under § 502(a)'s scope. *Id.* at 325. And in *Montefiore*, the court held that "at least some of plaintiff's claims for reimbursement [were] completely preempted by federal law," while the remaining claims were subject to the district court's supplemental jurisdiction. *Id.*

To reach that conclusion, the Second Circuit applied each prong of the *Davila* test. *See id.* at 328. As to the first prong, the Second Circuit took a disaggregating approach, considering both (1) "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)" and (2) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.* at 328 (emphasis in original). As to the first inquiry, the Second Circuit observed that although § 502(a) is generally "narrowly construed to permit only the enumerated parties to sue directly for relief," nearly every circuit to consider the issue at the time, including the Second Circuit, had "'carv[ed] out a narrow exception to the ERISA standing requirements' to grant standing 'to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care.'" *Id.* at 329 (alteration in original) (quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001)).

As to the second inquiry, the Second Circuit considered whether the distinction "between claims involving the 'right to payment' and claims involving the 'amount of payment'—that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments"—mattered regarding whether such claims "can be construed as colorable claims for benefits pursuant to § 502(a)(1)(B)." *Id.* at 330–31. The Second Circuit noted that such a distinction was "helpful and instructive," but "applying it to the claims for reimbursement submitted by" the healthcare provider in *Montefiore* did not generate a favorable result for the provider on appeal. *Id.* at 331. That was because the claims for reimbursement

8

submitted on appeal "implicate[d] coverage determinations under the relevant terms of the Plan." *Id.* "None of the selected claims appear to be claims regarding, for example, underpayment or untimely payment, where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the Plan." *Id.*

As to the second prong articulated in *Aetna Health Inc. v. Davila*, the Second Circuit concluded that there was no "independent legal duty" implicated by the defendant's actions. *Id.* at 332. The health care provider attempted to argue that "its claims sound[ed] separately and independently in quasi-contract law" via verbal communications between the provider and the fund to verify the patient's eligibility. *Id.* The Second Circuit rejected that theory, though, reasoning that it "did not create a sufficiently *independent* duty under *Davila*" because the verbal "pre-approval process" described "was *expressly required by the terms of the Plan itself* and [was] therefore inextricably intertwined with the interpretation of Plan coverage and benefits." *Id.*

Although it does not appear that the Fourth Circuit has addressed the precise question the Second Circuit faced, it has cited *Montefiore* with approval, albeit in an unreported opinion. *See Greenville Hosp. Sys. v. Emp. Welfare Ben. Plan for Emps. of Hazelhurst Mgmt. Co.*, 628 F. App'x ·842, at 846 n.3 (4th Cir. 2015) ("Other circuits have used the same distinction between 'right to payment' and 'rate of payment' claims to determine whether ERISA applies." (collecting cases)). Moreover, courts within the Fourth Circuit, including the District of Maryland, have repeatedly held that "third-party providers . . . may sue under § 502(a) when the provider is specifically assigned the beneficiary's rights under the ERISA plan."[4] *Johns Hopkins Hosp. v. Carefirst of Maryland, Inc.*, 327 F. Supp. 2d 577, 581 (D. Md. 2004) (citing *Nat'l Ctrs. for Facial Paralysis,*

---

[4] Although Mercy asserts in its opposition that it brings this suit because it has "an assignment of benefits and stands in the shoes of the participant," ECF 14, at 6, the fact of the assignment is not alleged in the complaint, *see* ECF 2.

*Inc. v. Wal–Mart Claims Admin. Group Health Plan*, 247 F. Supp. 2d 755 (D. Md. 2003); *Drs. Reichmister, Becker, Smulyan and Keehn, P.A. v. United Healthcare of the Mid–Atlantic, Inc.*, 93 F. Supp. 2d. 618 (D. Md. 2000)). "In those cases, the courts recognized that the provider stood in the shoes of the participant or beneficiary and therefore assumed that individual's standing under Section 502(a)(1)(B)." *Id.*

PAI argues that Mercy's breach of contract claim satisfies the *Davila* analysis. *See* ECF 17, at 3. Specifically, PAI disputes Mercy's characterization that its claims cannot be construed as colorable claims for benefits under § 502(a) because, according to PAI, "there is no independent right to benefits outside the ERISA plan between Fidelis and PAI." *Id.* at 5. PAI argues that in *Montefiore* and like cases, "medical service providers brought contract actions against a benefits plan alleging that the plan did not pay the agreed upon amount for services rendered to an insured, based upon a *separate* contractual obligation between the medical service provider and the benefits plan," "totally independent from an ERISA plan" and which the beneficiaries were not party to. *Id.* (emphasis added). "In contrast," PAI asserts that Mercy's complaint "does not allege that its right to payment is derived from a separate contractual obligation apart from the health insurance plan Fidelis provides its employees." *Id.* at 6.

One such example of a case involving a separate agreement from the benefits plan is the Fifth Circuit's decision in *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525 (5th Cir. 2009). *See* ECF 17, at 5. There, the healthcare provider, Lone Star, entered into a provider agreement with Aetna, the administrator of a benefits plan. *Lone Star*, 579 F.3d at 528. Lone Star sued Aetna in Texas court under the Texas Prompt Pay Act, alleging that Aetna had not paid Lone Star's payment claims at the rates established in the provider agreement within the time period required by the state law. *Id.* "Aetna argue[d] that Lone Star's state law claims [sought] to recover

.benefits due to Lone Star under the terms of their patients' [p]lans and [were] thus preempted by ERISA." *Id.* at 529. "Lone Star, however, argue[d] that their state law claims ar[o]se solely from the [p]rovider [a]greement, as Aetna failed to pay the correct contractual rate for services rendered to patients who were [m]embers of Aetna [p]lans." *Id.* The Fifth Circuit synthesized the case into two questions: "(1) whether state law claims that arise out of a contract between medical providers and an ERISA plan are preempted by ERISA; and (2) whether Lone Star's state law claims in fact implicate[d] only rate of payment issues under the [p]rovider [a]greement, or if they actually involve[d] benefit determinations under the relevant plan." *Id.*

The Fifth Circuit first observed that the "determination of the rate that Aetna owes Lone Star under the Provider Agreement d[id] not require any kind of benefit determination under the ERISA plan." *Id.* at 530. It reasoned that "[a] claim that implicates the *rate* of payment as set out in the [p]rovider [a]greement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA." *Id.* (emphasis in original). Even though the benefits plan and the provider agreement cross-referenced each other, the terms of the benefits plan were not "at issue in a dispute over whether Aetna paid the correct rate for covered services." *Id.* In sum, "where claims do not involve coverage determinations, but have already been deemed 'payable,' and the only remaining issue is whether they were paid at the proper contractual rate," the Fifth Circuit held that "ERISA preemption does not apply." *Id.* at 532. Turning to Lone Star's claims specifically, the Fifth Circuit further concluded that "claims for underpayment" under the provider agreement, which did "not implicate coverage determinations under the terms of the relevant plan," were not preempted, but left to the district court the determination of "whether any of the payment claims submitted by Lone Star" actually fell into

11

that category or alternatively "implicate[d] a coverage determination under the plan and thus a federal issue under ERISA." *Id.* at 533.

PAI is correct that Mercy's complaint does not allege a separate provider agreement or contract governing the reimbursement Mercy alleges it was entitled to. *See generally* ECF 2. However, the mere *existence* of a *provider agreement*, specifically, separate from the benefits plan, was not the sole driver of the Fifth Circuit's conclusion in *Lone Star*, or the Second Circuit's conclusion in *Montefiore*. Rather, key to those holdings was the point that the central issue in resolving the claims at issue—i.e., "whether the[ reimbursements] were paid at the proper contractual rate"—did "not require any kind of benefit determination under the ERISA plan." *Lone Star*, 579 F.3d at 530; *Montefiore*, 642 F.3d at 331. Instead, in *Lone Star*, for example, "determination of the rate that Aetna owes Lone Star" was solely a matter of the compensation schedule provided for in the provider agreement. 579 F.3d at 530.

In the present case, instead of a provider agreement, Mercy alleges that Defendants should have reimbursed Mercy based on the "rates set by the Maryland Health Services Cost Review Commission." ECF 2, at 2 ¶ 8. "The HSCRC was established by the General Assembly to regulate the rates charged by hospitals and other related institutions." *Ins. Comm'r of State v. CareFirst of Maryland, Inc.*, 816 A.2d 126, 130 (Md. App. 2003). The Commission's powers and duties are provided for in the Health-General Article of the Maryland Code. *See* Md. Code Ann., Health-Gen. § 19-201 et seq. Among other things, the Commission is empowered to "review the costs, and rates, quality, and efficiency of facility services[.]" *Id.* § 19-219(a). To carry out that power, the Commission is permitted to "review and approve or disapprove the reasonableness of any rate or amount of revenue that a facility sets or requests." *Id.* § 19-219(b)(1). "A facility shall: (i) Charge for services only at a rate set in accordance with this subtitle; and (ii) Comply with the

12

applicable terms and conditions of the all-payer model contract." *Id.* § 19-219(b)(2). In other words, the Commission "reviews such rates to determine whether they are reasonable, and if so, approves them." *Ins. Comm'r of State*, 816 A.2d at 130.

In so doing, the Commission *effectively* "sets the rate by which hospitals are reimbursed . . . for services rendered." *United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 678 (D. Md. 2012). But it is not the source of any independent contractual obligation between provider, beneficiary, or plan, as far as this Court can determine. As such, although the Commission's rate-setting may provide the *reason* for Mercy's seeking reimbursement at certain rates in this action, it does not actually give rise to any contractual obligation providing for what reimbursement is *owed* in this case. *Cf., e.g., Montefiore*, 642 F.3d at 326 ("These types of limitations [on reimbursement] are usually set by separate agreements between providers and . . . the ERISA benefit plan[.]"). The question, then, is what contractual obligation(s) does Mercy allege give(s) rise to Mercy's legal right to reimbursement at a particular rate from PAI?[5] The complaint fails to provide an answer.

---

[5] In this discussion, the Court observes that both parties essentially ignore the complaint's mention of "[t]he Annotated Code of Maryland, Insurance Article, Section 15-1005." ECF 3, at 3 ¶ 14. Likely, this is for a good reason. Section 15-1005 of the Insurance Article of the Maryland Code provides that generally "within 30 days after receipt of a claim for reimbursement from a person entitled to reimbursement . . . from a hospital or related institution, . . . an insurer, nonprofit health service plan, or health maintenance organization shall" (1) "transmit payment for the claim in accordance with this section" or (2) "send a notice of receipt and status of the claim" pursuant to the requirements of the section. Md. Code Ann., Ins. § 15-1005(c). "If an insurer, nonprofit health service plan, or health maintenance organization fails to pay a clean claim for reimbursement or otherwise violates any provision of this section," that entity "shall pay interest on the amount of the claim that remains unpaid 30 days after receipt of the initial clean claim for reimbursement" at monthly rates set by the statute. *Id.* § 15-1005(g)(1). Decisions involving this provision of the Maryland Code are few and far between, but the District of Maryland has before considered whether § 15-1005, sometimes referred to as the "Maryland Prompt Pay Statute," governed interest payments in a similar context. *See Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 312, 322 (D. Md. 2011) (finding that a pharmacy was "not entitled to prejudgment interest under the Maryland Prompt Pay Statute" because the pharmacy's services were not covered under a separate subscribed agreement, but concluding that the pharmacy was nonetheless entitled to "the federal statutory post-judgment interest rate under 28 U.S.C. § 1961" through a

PAI argues it is "clear that it cannot be determined whether Plaintiff's claim for payments for medical services at the rates set by the MHSCRC is valid absent interpreting the terms of Fidelis' plan." ECF 9-1, at 8. This may be true, however the Court cannot, based on the allegations in the complaint alone, discern why that is so. The Court's inability to do so stems from the fact that Mercy's factual allegations fail to provide any indication of what contract gives rise to the reimbursement obligation or the amount at which such reimbursements will occur. That omission leads the Court to a larger issue—whether, even assuming the claim is *not* preempted by ERISA, Mercy sufficiently alleges a breach of contract claim against PAI. The answer, as explained below, is "no."

## B.    Breach of Contract

Even assuming that the present claim is a state law claim for breach of contract and not preempted by ERISA, as Mercy argues, *see* ECF 14, at 9, PAI nevertheless contends that Mercy has "failed to demonstrate a prima facie breach" by PAI in its complaint, ECF 9-1, at 12. "Under Maryland law,[6] to establish a breach of contract claim, the plaintiff must allege: (1) 'that the defendant owed the plaintiff a contractual obligation'; and (2) 'that the defendant breached that

---

valid assignment of rights under § 502(a) from CareFirst's insureds). The Maryland Prompt Pay Statute has application only when an "organization fails to pay a clean claim for reimbursement" pursuant to the statute's requirements, Ins. § 15-1005(g)(1)—it does not itself determine when a contractual obligation makes such a reimbursement due in the first place, nor does it decide the *amount* of the reimbursement.

6 "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); and then citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). "Under Maryland law, where the contract contains no choice of law clause, courts [ ] apply the law of the jurisdiction where the contract was made." *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 676 (D. Md. 2013) (internal citation and quotation marks omitted). Here, because Mercy has not alleged what contract gave rise to the breach it asserts, it is not clear what law should be applied. However, the parties seem to proceed under the assumption that Maryland law applies, so the Court follows suit for the purposes of this opinion. *See* ECF 9-1, at 12; ECF 14, at 9–10.

14

obligation.'" *DT Consultants, LLC v. Howmedica Osteonics Corp.*, Civ. No. GLR-17-1697, 2018 WL 3416893, at \*3 (D. Md. July 13, 2018) (quoting *Palermino v. Ocwen Loan Servicing, LLC*, Civ. No. TDC-14-0522, 2015 WL 6531003, at \*4 (D. Md. Oct. 26, 2015)). In the complaint, Mercy "seemingly asserts that PAI is required to reimburse members of the healthcare plans it administers with rates set by the MHSCRC." ECF 9-1, at 12. But Mercy does not identify what contract gives rise to PAI's obligation to do so, nor the precise nature of PAI's obligation. *See generally* ECF 2. Indeed, although there is much discussion in the briefing about benefits plans and provider agreements, there is no trace of such contracts in the complaint itself.

PAI thus argues that Mercy has done nothing more than "merely provide[] a conclusory allegation that PAI breached an unidentified contract by not paying the medical bills at issue at the rates set by the MHSCRC." ECF 9-1, at 12. Mercy does not meaningfully address this argument in its opposition. *See* ECF 14, at 9–10; ECF 17, at 1 ("Plaintiff devotes one sentence in its Opposition to the essential problem with its claim against PAI, namely, that it cannot and does not identify a contractual duty PAI owed to it."). Given that PAI correctly points out that the complaint "fails to allege the existence of any contract between [Mercy] and PAI or how PAI specifically breached any contractual obligation it owed to [Mercy]," ECF 17, at 2, the Court agrees with PAI that the claim asserted against it must be dismissed pursuant to Rule 12(b)(6). Accordingly, PAI's motion to dismiss will be granted, and PAI will be dismissed as a defendant in this action.

## C.    Fidelis

PAI indicated in its notice of removal, and in its response pursuant to the Court's standing order governing removals, that Fidelis was not served at the time of removal. *See* ECF 1; ECF 8, at 1 ("The State Court docket does not indicate service of process on Defendant Fidelis Software Solutions, LLC ("Fidelis"). On information and belief, Fidelis has not yet been served with the

15

State Court summons and complaint."). Section 1448 of Title 28 of the United States Code governs

process for unserved defendants after removal. It provides in relevant part:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

28 U.S.C. § 1448. Accordingly, "[w]hen a case is removed to federal court, a plaintiff may be

afforded additional time to complete service or to obtain issuance of new process if, prior to the

case's removal, 'service of process has not been perfected prior to removal,' or 'process served

proves to be defective.'" *Rice v. Alpha Sec., Inc.*, 556 F. App'x 257, 260 (4th Cir. 2014).

In this case, the record does not reflect that Fidelis has been served, either before or after

removal. Under federal law, the time for service has long passed.[7] *See* Fed. R. Civ. P. 4(m)

(requiring service within 90 days after a complaint is filed unless good cause exists for the failure

to serve). Rule 4(m) further provides that if service is not effectuated in that time period, then "on

motion or on its own after notice to the plaintiff" the Court "must dismiss the action without

prejudice against that defendant or order that service be made within a specified time." *Id.* It

appears to the Court that Mercy has failed to comply with Rule 4(m) as to Defendant Fidelis

Software Solutions, LLC. *See CMBS LLC v. Davie Cnty.*, Civ. No. 1:20-71, 2021 WL 1227015,

at *1 (M.D.N.C. Mar. 31, 2021) (dismissing defendant under Rule 4(m) where defendant had "not

been served with process before removal or following removal"). Accordingly, this decision will

serve as notice to Mercy, as required under Rule 4(m). If Mercy fails to update the Court as to the

---

[7] And under Maryland law, a summons must be served on a defendant within 60 days after the date it is issued, renewable only upon written request. *See* Md. Rule 2-113. The Maryland rules further provide that an action against a defendant who has not been served after 120 days of issuance of summons is subject to dismissal. *See* Md. Rule 2-507.

status of service on Fidelis and/or move for an extension of time to effectuate service within fourteen (14) days of the date of this decision, the Court will dismiss the claim against Fidelis without prejudice and without further notice to Mercy. Moreover, if Mercy seeks to amend its complaint in light of the above discussion[8] or to identify any issues with the Court's jurisdiction over this removal action now that PAI is dismissed, it should so indicate in the same time period.

## IV.    CONCLUSION

For the foregoing reasons, PAI's motion to dismiss is granted. Additionally, Mercy has fourteen (14) days from the date of this decision to update the Court as to the status of service on Fidelis and to move for any relief related to service, amending its complaint, or seeking remand of this action to state court. Failure to do so will result in dismissal of this case without further notice.

A separate implementing order will issue.

Dated: July 30, 2026

_____/s/_____
Brendan A. Hurson
United States District Judge

---

[8] In its opposition, Mercy "requests that it be allowed to amend its Complaint to comply with ERISA Requirements and to amend the Cause of Action" depending on the resolution of PAI's motion. ECF 14, at 10. "Ordinarily, requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend." *Davis v. Screening Reps., Inc.*, Civ. No. 25-1785-BAH, 2025 WL 3551846 (D. Md. Dec. 11, 2025) (citing *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008)); *see also Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009). Should Mercy seek leave to amend, it must do so by motion and in compliance with this Court's local rules. *See* Loc. R. 103.6(a) (D. Md. 2025).

17